## Pinder's Estate

*William Taylor, Jr.*, and *Albert E. Holl, Jr.*, for petitioner.

VAN RODEN, P. J., November 19, 1947.—Decedent died May 17, 1947, intestate and without issue, survived by his widow and by two brothers and four sisters, all of whom are of age. Letters of administration were duly granted to decedent's widow on July 14, 1947, by the Register of Wills of Delaware County. On September 24, 1947, the said widow filed her petition for the $500 exemption, as provided by section 12 of the Fiduciaries Act of June 7, 1917, P. L. 447, sec. 12(a), 20 PS §471. After due service and publication thereof, the matter was regularly scheduled for hearing on November 3, 1947, at which time testimony was presented to the court.

It appears from the uncontradicted averments of the petition (no answer having been filed by any party in interest), as well as from the testimony, that at the time of decedent's death petitioner was his lawful wife

and that the family relation existed between them. Under normal circumstances, such proof would be sufficient to establish the widow's right to the exemption, and the burden of overcoming this by the presentation of evidence tending to show a forfeiture of her rights would be upon the party opposing the petition: Mehaffey Estate, 102 Pa. Superior Ct. 228 (1931).

The situation in the instant case is unusual, however, in that it appears on the face of the petition that decedent's death was caused by a stab wound inflicted by petitioner. Accordingly, although no opposition to the petition has been interposed by any party in interest, it is the opinion of the court that in good conscience it would not be right to ignore the cause of decedent's death but inquiry should be made into the circumstances thereof to determine whether petitioner, in causing the death of decedent, thereby forfeited her right to the statutory exemption.

The Act of August 5, 1941, P. L. 816, sections 2 and 3, 20 PS §§3442, 3443, provides that "No slayer shall in any way acquire any property or receive any benefit as the result of the death of the decedent", and "The slayer shall be deemed to have predeceased the decedent as to property which would have passed from the decedent or his estate to the slayer under the statutes of descent and distribution or have been acquired by dower, by courtesy or by statutory right as surviving spouse".

The widow's exemption is not an interest passing under the intestate law, but is a gratuity payable to the widow unless she has "forfeited her rights": Sadowski Estate, 158 Pa. Superior Ct. 119, 121 (1945). Such gratuity represents property to which the widow is entitled only "by statutory right as surviving spouse". Accordingly, although there appears to be no judicial precedent on the point, this court holds that the widow's exemption is forfeited where the evidence establishes that she was the slayer of her spouse.

In view of this holding, it is necessary to determine whether this petitioner is a slayer within the meaning of the act. Section 1 (20 PS §3441) defines "slayer" as meaning "any person who participates, either as a principal or as an accessory before the fact, in the willful and unlawful killing of any other person".

Did this widow kill her husband wilfully and unlawfully? In her petition, she avers that "decedent's death was caused by a stab wound which petitioner was compelled to inflict as an act of self-defense to save herself from death or great bodily harm at the hands of decedent, who, at the time, was committing assault and battery upon petitioner and was choking her". If such is true, the killing was in self-defense, and neither wilful nor unlawful, but was legally justifiable: Abernethy v. Commonwealth, 101 Pa. 322 (1882).

Although, ordinarily, this court would accept as true the facts averred in a petition, in the absence of any answer being filed thereto, nevertheless in this unusual case the court is constrained to inquire more deeply into the true facts, in view of the pronounced public policy of this State that "no person shall be allowed to profit by his own wrong". (Section 15 of the act cited, supra, 20 PS §3455.)

The fact that this widow has been convicted in the Court of Oyer and Terminer of Delaware County as of no. 384, June sessions, 1947, of the crime of voluntary manslaughter in connection with the death of this decedent, certainly cannot be ignored. Of course, facts known to the trial judge but not placed upon the record may not properly be considered in the disposition of the case: Commonwealth v. One 1941 Plymouth Sedan, 160 Pa. Superior Ct. 575 (1947). While this court cannot take judicial knowledge of the records of another court (23 C. J. 115, §1922), there is nothing to prevent the court, of its own motion, from inquiring into such records of other courts, and in this case the hearing judge has deemed it advisable to place upon the record of this

case the record of petitioner's conviction in the criminal case.

It now becomes necessary to consider the effect of such conviction upon the instant issue. It cannot be res adjudicata, since there is no identity of parties, the criminal case being an issue between the Commonwealth and defendant, and the instant proceeding one between petitioner and the other heirs at law. The general common-law principle is stated in Commonwealth v. Quaranta, 295 Pa. 264, 270 (1928) :

"The judgment in a criminal case is not res judicata of the facts on which that case was based, where such facts or a part of them are in dispute in another action between different parties."

This rule has received statutory recognition in that section 14 of the Act of 1941 (20 PS §3454) provides that such record of conviction is "admissible in evidence against a claimant of property in any civil suit", but does not make the conviction a conclusive bar to civil rights. The record of conviction is therefore to be considered as prima facie evidence in this proceeding that the homicide was "wilful and unlawful", which may be rebutted by competent and satisfactory evidence to the contrary. Cf. Romano v. Romano, 24 D. & C. 215 (1938).

To overcome the presumptive effect of the record of conviction, the widow took the witness stand and testified under oath that on May 16, 1947, shortly after midnight, after visiting a taproom with a girl friend, she returned home and found decedent standing in the kitchen. He said, "You think you're smart". When she didn't answer, he "hauled off and hit" her on the head, then struck her with his fist on the jaw. The force of this blow knocked her to the floor and while she was lying there, he started choking her. She testified that she thought he was going to kill her and that she was in real fear of her life, so she grabbed an ice pick off the ice chest which was right next to her and

swung at him with it in an attempt to get away from him, there being no other way of getting past him. When the ice pick struck him, he turned around, walked out of the kitchen into the living room, and there dropped to his knees. She called out to a passerby for assistance, and the two of them lifted the husband to a studio couch and then tried to summon a doctor. When it appeared that no doctor was available, petitioner sent for the rescue wagon and she accompanied the husband in the rescue wagon to the hospital where he died. She made no attempt at flight.

Petitioner, while on the witness stand, appeared to be sincere, truthful and entirely credible. Her story of having been severely beaten and choked by decedent was fully corroborated by a series of photographs taken a few days after the occurrence and properly offered in evidence, which clearly showed scars and lacerations on her face and head and bruises and finger marks on her throat. The photographs establish the reasonableness of her apprehension that her life was in danger at the hands of her assailant.

If petitioner acted in self-defense, then the killing was neither wilful nor unlawful. As stated in Commonwealth v. Capalla, 322 Pa. 200, 204 (1936) :

· "It is well settled that to kill another, if it is necessary to do so in order to protect one's life or limb, or to save one's self from great bodily harm, or under circumstances reasonably giving rise to fear of such injuries unless one kills one's assailant, is justifiable homicide."

In Commonwealth v. Miller, 313 Pa. 567, 569 (1934), it was held "that a killing committed under an apprehension that one's life is in danger is, if the apprehension is reasonable, excusable as done in self-defense".

After a full and careful consideration of all the evidence in the case including the record of the criminal

conviction, this court finds that petitioner killed her husband in self-defense in an attempt to escape from his brutal attack which placed her in fear of death or great bodily harm at his hands; that her apprehension of imminent danger was real and reasonable, and that no other avenue of escape was open to her; and that the killing was legally justifiable and excusable, and was therefore neither wilful nor unlawful. Accordingly, petitioner cannot be adjudged a slayer within the meaning of the Act of 1941 so as to cause a forfeiture of her statutory rights as widow of decedent.

This conclusion is not to be construed in any regard as a collateral attack on the judgment of the court of oyer and terminer. Had the parties, the issues and the evidence in the two cases been the same, this court would very naturally have accepted the prior judgment of that court as controlling. But this case must be decided on the evidence here presented, and petitioner's testimony in this case remains unshaken and uncontroverted. The Commonwealth was not a party in interest in this proceeding, and the other heirs of decedent not only failed to appear to contest the claim of the widow, but they informed counsel for petitioner that they considered the widow entitled to this property.

Accordingly, the court enters the following

## Decree

And now, to wit, November 19, 1947, upon consideration of the petition for widow's exemption, and the presentation of proof of service and publication, and nonforfeiture of the rights of the widow having been established by competent evidence, it is hereby ordered, adjudged and decreed that the sum of $500 in money be, and the same is, hereby set apart and awarded to Sarah Pinder, as her widow's exemption under section 12 of the Fiduciaries Act of 1917.