Amour Estate.

Argued May 4, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and McBRIDE, JJ.

*Calvin J. Friedberg,* with him *Joseph A. McKenna,* and *Hicks, Williamson, Friedberg, Jones, and McKenna,* for appellant.

*Thomas B. Noonan,* with him *John C. Noonan,* for appellee.

OPINION BY MR. JUSTICE BELL, September 29, 1959:

Helen J. Amour died intestate on March 31, 1956. On April 18, 1956 letters of administration were issued to her sister, Jane Bokus (the appellant here), who filed a petition entitled "Petition for Adjudication of Title to Personal Property".

A savings fund account was opened on March 18, 1952, in the amount of $2064.30 in the name of "Helen J. Amour or Joseph F. Carlin (Uncle)." The signature card was signed (on its face) by Helen J. Amour and Joseph F. Carlin. On the back of the signature card, which was also signed by Helen J. Amour and Joseph F. Carlin, appeared the following words:

"It is understood and agreed that any and all sums that may from time to time stand in this account, to the credit of the undersigned depositors, shall be taken and considered as belonging to them *as joint tenants** and not as tenants in common; and said The Beneficial Saving Fund Society of Philadelphia, is hereby authorized and directed to *pay, unconditionally,* from such sums any and *all orders drawn* by us or *by either or any of us;* and it is further agreed and understood that in case of the death of either or any of us, said The Beneficial Saving Fund Society of Philadelphia is hereby authorized and *directed to deal with the survivors or survivor of us as the sole and absolute owners of such sums.* Each of us hereby authorizes the other or any of the others or The Beneficial Saving Fund Society of Philadelphia to endorse for deposit in this account any check or other instrument for the payment of money which may be drawn or endorsed

---

* Italics throughout, ours.

to the order of all or either or any of us.  We intend to be legally bound hereby; and this agreement shall bind our respective heirs, executors and administrators or assigns.

Mar 18 1952

"Witness our hands and seals this .......... day of    19

Witnesses

M. M. Burns

Helen J. Amour         (Seal)

Joseph F. Carlin        (Seal)"

At the time the account was opened the money which was deposited therein and all subsequent deposits were the property of Miss Amour, and Carlin was not related to her although they had known each other for sixteen years.  The pass book was retained by Miss Amour except when she entrusted it to him for the purpose of making withdrawals.  Two days after Miss Amour's death Carlin withdrew $225 and a week later withdrew the balance and deposited the entire amount in a savings account in his name alone.

The Administratrix appealed from the Decree of the Orphans' Court which dismissed her petition.

Appellant contends that parol evidence was admissible to show that the parties did not intend to create a joint tenancy with right of survivorship, but to create a joint account *for the convenience of Miss Amour, with any balance at her death to go to her estate.*

In *Furjanick Estate,* 375 Pa. 484, 100 A. 2d 85, the Court said (page 493) : "The question in this class of case ofttimes depends upon the exact wording of the deposit account and the card or agreement accompanying it.  Do they clearly show the intention of the depositor, settlor, or contractor?  If his intent is uncertain or ambiguous, parol evidence is admissible; if the writings clearly show an intent to make an abso-

lute gift, or an irrevocable trust, or a specific and complete agreement between the parties, then in the absence of fraud, accident or mistake no subsequent acts or declarations of the donor or settlor or contractor can change or revoke or annul the gift, or trust, or contract, without the consent of the other party."

In *Martella Estate,* 390 Pa. 255, 135 A. 2d 372, the Court said (pages 258-9) : "Cases involving joint bank accounts, joint savings accounts, joint certificates of deposit and joint safe deposit boxes—especially when they are in joint names with right of survivorship—have proved vexing. Certain pertinent principles of law are now well settled by recent decisions of this Court, although their application to the different factual situations which so frequently arise is often difficult.

. . .

" 'In the recent case of King Estate, 387 Pa. 119, 126 A. 2d 463, . . . the Court said (page 122) : "To constitute a valid gift inter vivos . . ., two essential elements are requisite: An intention to make an immediate gift and such an actual or constructive delivery to the donee (a) as to divest the donor of all dominion and control, or (b) if a joint tenancy is created, as to invest in the donee so much dominion and control of the subject matter of the gift as is consonant with a joint ownership or interest therein." ' "

The touchstone of this case is the fact that what purports on its face to be a complete written agreement was executed by Miss Amour and Carlin at the time the account was opened. No fraud, accident or mistake was alleged or proved.

In *Furjanick Estate,* 375 Pa., supra, the Court said (page 491) : "Where no fraud, accident or mistake is averred and proved, parol evidence of a prior or contemporaneous oral representation or agreement which

varies, modifies or conflicts with a (complete) written agreement, is inadmissible in evidence: Phillips Gas and Oil Co. v. Kline, 368 Pa. 516, 84 A. 2d 301; Grubb v. Rockey, 366 Pa. 592, 79 A. 2d 255; Walker v. Saricks, 360 Pa. 594, 63 A. 2d 9; Gianni v. Russell & Co., Inc., 281 Pa. 320, 126 A. 791; Speier v. Michelson, 303 Pa. 66, 154 A. 127; O'Brien v. O'Brien, 362 Pa. 66, 66 A. 2d 309; Russell v. Sickles, 306 Pa. 586, 160 A. 610."

The instant case is ruled by *Furjanick Estate.* Pit Furjanick, aged 83, opened a savings and checking account in the joint names of himself and his niece, Sue Furjanick, which was executed by each of them. On the reverse side of the signature card they "agree each with the other . . . that all sums heretofore or hereafter deposited by either or both of said joint depositors . . . are and shall be owned by them jointly, with the right of survivorship . . ., and be subject, . . . during the life of both, to the check or order of withdrawal of both or either of them; and that upon the death of either the balance in said account shall belong to the survivor of them, and payment thereof . . . on the check of the survivor shall be valid and discharge the said bank from all liability." The signature card further provided that the agreement was not revocable except when signed by both depositors, and both depositors executed the signature card.

The Court reviewed and analyzed the many prior decisions and said (pages 489-490, 491, 493) : "When a depositor creates a joint savings or checking (bank) account with right of survivorship, and a signature card so stating is executed by both parties, these facts are prima facie evidence of a gift inter vivos by the depositor to the other, and of the creation of a joint tenancy with right of survivorship: Fell Estate, 369 Pa. 597, 87 A. 2d 310; Lochinger v. Hanlon, 348 Pa.

29, 33 A. 2d 1; Mader et al. v. Stemler et al., 319 Pa. 374, 179 A. 719. A deposit accompanied by such a writing, but nothing more, is considered so incomplete or equivocal as to permit the admissibility of parol evidence: Fell Estate, 369 Pa., supra; but such evidence in order to prevail must be clear, precise and indubitable: Fell Estate, 369 Pa., supra; Dempsey v. National Bank of Scranton, 359 Pa. 177, 181, 58 A. 2d 14; Mader et al. v. Stemler et al., 319 Pa. 374, 379, 179 A. 719.

"The writings in the instant case were different from and went far beyond the writings or written instruments in the cases hereinabove mentioned, or in any other case (so far as our research has revealed). This was not a savings or checking account in the name of the depositor in trust for his niece, or a joint savings or checking account with an ambiguous title, or merely a joint savings account with right of survivorship. Nor was this a case of a bank account or trust created by fraud, accident or mistake, or undue influence; nor was the agreement permeated with uncertainty or ambiguity.

. . .

". . . We may appropriately ask, what is the use of inserting a provision as to revocation or any other provision in a complete and unambiguous written agreement, if oral testimony can vitiate and nullify the written agreement and set up an entirely different and conflicting agreement?

"We have repeatedly said and we reiterate that we intend to uphold the integrity of written instruments and will not permit the Parol Evidence Rule to be circumvented or undermined."

The many prior decisions involving joint bank accounts have been so recently reviewed by us and so ably analyzed by Judge GANGLOFF, that we deem it unnecessary to further analyze or distinguish them. It

will suffice to say that all the cases upon which appellant relies are clearly distinguishable.

Decree affirmed; costs to be paid by appellant.